These claims were consolidated for hearing before Deputy Commissioner Dollar in Asheville on August 23, 1993. I.C. Files 213904 and 213901 are duplicate files of I.C. File 208049.
Following the hearing, the record remained open to allow the parties to produce necessary medical evidence. The depositions of Dr. George W. Brown and Dr. Wayne Montgomery were received into the record. All objections raised therein are ruled upon in accordance with the law and the Opinion and Award herein stated.
The parties subsequently agreed to stipulate medical reports in lieu of depositions, and the following were received into the record:
 a. Psychiatric/Functional Capacity Assessment — 16 pages;
b. Dr. Wayne Montgomery — 1 page;
c. Steve Carpenter — 8 pages;
d. St. Joseph's Pain Therapy Center — 49 pages;
e. Key Risk Management Accident Report — 2 pages;
f. Memorial Mission Hospital — 3 pages;
g. Dr. Lawrence Van Blaricom — 11 pages;
h. Haywood County Hospital — 4 pages;
i. Dr. George W. Brown — 15 pages;
j. Dr. Sean Maloney — 4 pages;
 k. Smoky Mountain Counseling Center — 16' pages; and
l. St. Joseph's Radiology — 1 page.
* * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties at the hearing as
STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of the case, the parties are properly before the Commission, and the parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the parties at the time of the injuries giving rise to these claims.
3. Key Risk Management Services is the servicing agent for the self-insured employer.
4. The I.C. Form 22 submitted into the record established the plaintiff's average weekly wage as $278.95, which yields a weekly compensation rate of $185.98.
5. The issues for determination are:
 a. Whether the plaintiff sustained compensable injuries to her back and wrist in the January 10, 1991 accident, and if so, to what compensation is she entitled.
 b. Whether the plaintiff sustained a compensable injury in April of 1991, and if so, to what compensation is she entitled.
 c. Whether the plaintiff sustained a compensable injury on or about May 17, 1991, and if so to what compensation is she entitled.
6. At the hearing, the following were received into evidence:
 a. Plaintiff's Exhibit 1 — Sketch of Palletizer (not to scale);
 b. Plaintiff's Exhibit 2 — Accident Report of January 10, 1991;
 c. Plaintiff's Exhibit 3 — Accident Report of April 23, 1991;
 d. Plaintiff's Exhibit 4 — Accident Report of May 3, 1991;
 e. Plaintiff's Exhibit 5 — May 17, 1991 Accident Report;
f. Plaintiff's Exhibit 6 — July 8, 1992 letter;
g. Plaintiff's Exhibit 7 — August 6, 1990 Appraisal;
 h. Plaintiff's Exhibit 8 — September 5, 1990 Appraisal;
i. Plaintiff's Exhibit 9 — October 5, 1990 Appraisal;
j. Plaintiff's Exhibit 10 — video of palletizer;
k. Defendant's Exhibit 1 — I.C. Form 18;
 l. Defendant's Exhibit 2 — Long Term Disability Form; and
m. Plaintiff's Exhibit 11 — Long Term Disability Form.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a 53 year old female who began working at defendant-employer in July of 1990, in a temporary capacity. Shortly thereafter, she was placed on full time status and assigned to operate a palletizer machine. During the time Plaintiff worked with Defendant, she received good evaluations. Plaintiff had several accidents at Defendant's business which were each documented by a company accident report.
2. The palletizer is a machine which consists of a conveyor which transports plastic soft drink bottles of one, two or three liter-size, onto a palletizer carriage which arranges the bottles in layers on wooden pallets.
3. The plaintiff's duties consisted of observing the bottles, to make certain they are upright. Once the machine places the last layer of bottles onto the pallet, the operator places a wooden frame weighing 12 to 15 pounds on top of the last layer of bottles.
4. On January 10, 1991, the plaintiff was operating the palletizer when it malfunctioned and the carriage struck her several times, knocking her backwards and rendering her unable to extricate herself from the machine. She had to be helped out by fellow workers. The plaintiff reported that she injured her left wrist and shoulder when she put up her left arm to protect her body from the tier suction cups. She also told the treating physician that the blows from the palletizer injured her back. After she was freed, Plaintiff was taken to Memorial Mission Hospital by her supervisor, Robert Winfield. She missed the next day of work and returned to work on the second day. At this point, Plaintiff was seeing Dr. George Brown, a family doctor in Haywood County.
5. The incident of 10 January 1991 was accepted by the employer as an injury by accident and the Full Commission concurs that it was. Dr. Brown determined that plaintiff's injuries from this compensable accident have rendered her unable to be gainfully employed and the Full Commission so finds.
6. The plaintiff was instructed to do light duty work from January 10, 1991 to January 13, 1991 with no heavy lifting, pulling or pushing with her left arm or hand. Plaintiff was instructed to stay out of work for a period of time but she returned because she needed the income.
7. Dr. Brown first saw Plaintiff on February 14, 1991 after her back pain became unbearable. At that point, Dr. Brown referred Plaintiff to Haywood County Hospital for x-rays for both "back and hip pain," all of which is documented in a February 18, 1991 note from the hospital.
8. The plaintiff testified that she had never had low back problems before the palletizer incident on January 10, 1991.
9. On April 23, 1991, Plaintiff injured her wrist while working for Defendant. Plaintiff did not report the injury, missed no work from the injury, and did not claim the injury at the hearing. The plaintiff was counseled not to stack frames so high, and she received first aid at work. The Full Commission concludes that this was not a compensable accident.
10. On May 3, 1991 Plaintiff was working at her palletizer when the carriage came forward and would not go back. Plaintiff tried to move the carriage back manually when something popped in her hip. According to co-worker Steve Sorrells, the practice of moving the carriage manually was both an approved and taught method of returning the carriage when it became stuck. James Paul Styles, another co-worker, testified he saw Plaintiff from a distance of approximately one hundred (100) yards away push the carriage back when it stopped. He further testified Plaintiff said she hurt her lower back or hip soon after he observed the stuck carriage. This incident was an interruption in the work and constituted a specific traumatic incident and injury by accident for which plaintiff is entitled to compensation under the Workers' Compensation Act.
11. Plaintiff did not go to the hospital for that injury since she already had an epidural block scheduled on her back for her January 10, 1991 back injury. Plaintiff returned to work a few days after the May 3, 1991 injury.
12. According to the May 3, 1991 accident investigation report of Key Risk Management Services (Plaintiff Exhibit 4), the injury happened as follows: "Employee was running palletizer; the carriage went out to get a tear shirt [sic] the chip [sic] cylinder would not pick up a tear [sic] because the tear sheets [sic] were stacked too high. Employee says she put the machine in P [sic] and tried to bring the carriage back and it wouldn't M [sic] so she pushed the carriage back herself and hurt her back."
13. On May 17, 1991, the containers were sticking and "mashing" at Plaintiff's machine. While Plaintiff was going back and forth to keep the bottles from mashing, she turned her ankle and was unable to work for four (4) days due to this ankle injury. The injury was reported in an accident report dated May 17, 1991 (Plaintiff Exhibit 5). Plaintiffs ankle injury was documented in notes from Dr. Brown (see letter of January 14, 1993, progress notes of May 20, 1991 and St. Joseph's Pain Therapy note of September 25, 1991). This was an interruption in the work and constituted an injury by accident for which plaintiff is entitled to compensation under the Workers' Compensation Act.
14. Plaintiff tried to return to work for several weeks (from June 12, 1991 through July 4, 1991). Due to her multiple injuries, Plaintiff has been unable to return to any type of work since that time.
15. During the time Plaintiff was trying to recover from her injuries, Plaintiff received psychological treatment at Smoky Mountain Mental Health. Reports from Smoky Mountain Mental Health show an existence of "anxiety, secondary to situational problems" (see evaluation of January 15, 1992).Other notes concerning Plaintiff's reaction to her physical problems are set out in the following Smoky Mountain Mental Health note: "Patient continues to be stressed by legal problems, also continues to have pain secondary to her injury while attempting to get disability."
16. Medical personnel documented her temporary total disability from May 8, 1991 through the date of the hearing before the Deputy Commissioner (See Dr. L.S. Van Blaricom note of December 30, 1992, St. Joseph's Pain Therapy note of February 4, 1992, Dr. Brown note of January 20, 1992 and Dr. Brown deposition, p. 7). Plaintiff's treating doctor, Dr. Brown, rendered a specific opinion of her ability to work as follows:
 Q. All right. Did you form an opinion as to Mrs. Calhoun's ability to work during the time that you saw her between '91 and '93?
A. Yes.
Q. And —
 A. We tried her back at work on one occasion, and she was unable to continue to work because of continued pain in the posterior nuchal area, which is the back of her neck, and the entire back, including the lumbosacral area.
 Q. So did you develop or form an opinion as to whether Mrs. Calhoun could work during that time period?
 A. Yes. that was my opinion, that she was not able to work after we had this trial of work. Brown deposition, pg. 7
17. Dr. Brown determined that the injury of 10 January 1991 caused her inability to earn wages that is continuing.
 Q. The conditions that kept her from working from '91 to the present, were they related to the original injury she had?
A. Yes. She continued to have back pain.
18. Plaintiff's vocational prospects were considered by rehabilitation consultant Stephen Carpenter on July 17, 1992. His findings are summarized as follows:
 With regard to specific behaviors, Mrs. Calhoun's stamina was rated as low and her vitality of work energy and frustration tolerance were also rated as low. . . It is determined based on the client's statement, that she is severely restricted with regard to daily activities and interest at this time. Transferrable skills assessment were completed and it is determined that the injured worker has no transferrable skills. The injured worker is also being treated for depression and she admits to having significant depression at present, as well as suicide ideation. This further restricts her vocational ability. It is the conclusion of this vocational consultant that Mrs. Calhoun is not employable. . . As noted above, based on data outline in the previous section, it is the opinion of this counselor that Mrs. Calhoun is not employable in any job at present.
19. As the result of her injury by accident on 10 January 1991, Plaintiff has been unable to earn wages in her former position with defendant employer or any other employer since that date except for several periods when she went to work despite the pain because she needed the money.
20. Defendant is entitled to a credit for the periods that plaintiff was able to work.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of her employment on 10 January 1991, when she sustained an injury to her left arm, wrist and back. N.C. GEN. STAT. 97-2 (6). Additionally, the plaintiff has carried the burden of proving that this accident caused the back condition and disability for which she now claims compensation. The burden of proof is on the plaintiff to show that the injury complained of resulted from the accident in question. Richards v. Town of Valdese,92 N.C. App. 222, 374 S.E.2d 116 (1988), cert. denied, 324 N.C. 337,378 S.E.2d 799 (1989).
2. Although plaintiff suffered other injuries by accident following the 10 January 1991 injury by accident, her treating physician traced her inability to earn wages directly to the first disabling injury by accident, that suffered on 10 January 1991. In addition, the vocational rehabilitation specialist rendered an opinion that plaintiff is not employable. The Commission concludes that plaintiff's disability is total and continuing and that she is entitled to temporary total disability compensation to be paid by defendant.
* * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
AWARD
1. Defendant shall pay plaintiff, on account of her continuing and total disability, compensation at a rate of $185.98 per week from 10 January 1991 to the scheduled hearing date and thereafter, continuing at the same rate so long as she remains totally disabled. Such compensation as has accrued hereunder shall be paid in a lump sum, without commutation, subject to a reasonable attorney fee hereinafter approved. Defendants shall pay interest on such accrued compensation from 25 August 1993 (the date of the hearing below) until paid. All of the interest is payable to the Plaintiff. Defendant shall receive credit for the days plaintiff was able to work and for which she was paid a full day's pay during the period in question.
2. A reasonable attorney fee in the amount of twenty-five (25) percent of the accrued compensation benefits due under the above award is hereby approved for plaintiff's counsel, which shall be deducted from the award and forwarded directly thereto. For the balance of his fee defendant shall forward every fourth compensation check payable hereunder directly to plaintiff's counsel.
3. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated with plaintiff's incapacitating pain, defendant shall pay all reasonable and necessary medical expenses incurred as a result of the 10 January 1991 back injury giving rise hereto and as a result of the other compensable injuries when bills for the same are submitted in accordance with the Industrial Commission Rules.
4. Defendant shall bear the costs, including as part thereof, expert witness fees. Written 26 February 1996.
 S/ __________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________ COY M. VANCE COMMISSIONER