* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral argument before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms, with modifications, the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The plaintiff is Christopher K. Gagner ("plaintiff").
2. The employer-defendant is Freedom Metals ("defendant" or "defendant-employer").
3. The carrier at the time of plaintiff's alleged injury was Atlantic Mutual Insurance Co., GAB Robbins, Servicing Agent ("defendant").
4. Defendant employer employs greater than three full time employees and is bound by the provisions of the North Carolina Worker's Compensation Act.
5. An employment relationship existed between the plaintiff and defendant-employer on October 29, 2003, the time of plaintiff's alleged injury that is the subject of this action.
6. At the time of his alleged injury, plaintiff's average weekly wage was $440.00.
7. All parties are properly before the Industrial Commission and it has jurisdiction over the parties and subject matter, and they are subject to the provisions of the North Carolina Workers' Compensation Act.
In addition, the parties stipulated into evidence the following:
1. Packet of medical records and reports.
2. Packet of Industrial Commission Forms and filings.
3. Packet of employment and wage records.
4. Packet of pharmacy charges.
5. Packet of statements labeled attorney costs.
6. Discovery documents.
 7. Additional medical records submitted on April 25, 2005.
The Pre-Trial Agreement dated November 16, 2004, which was submitted by the parties, is incorporated by reference.
 * * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was thirty-two years old and had obtained his General Educational Development high school equivalency diploma. He had also taken a few college courses and obtained certifications to be a nurse's assistant and to drive a forklift. Prior to his employment with defendant-employer, he had worked in a variety of jobs, including as a certified nursing assistant, a shipping and receiving clerk, and in restaurant management.
2. During prior employments, plaintiff had sustained two back injuries that were treated as compensable under the Workers' Compensation Act. On February 17, 1999, he reportedly injured his back at work lifting steel objects. He was treated conservatively and did not have surgery but was out of work until at least April 2000. Dr. Goebel, an orthopedic specialist, released plaintiff to return to work on April 7, 2000, with a permanent thirty-pound weight lifting restriction.
3. Plaintiff sustained back injuries away from work mowing his grass at home in June or July 2000, coming down steps in March 2001, and moving a television in June 2001. On May 9, 2002, he lifted a sign for a restaurant where he was working and sustained another compensable injury to his low back. Dr. Eldad J. Hadar, a neurosurgeon, assumed his care and on June 4, 2002, performed surgery to decompress the L4-5 and L5-S1 interspaces. After the operation plaintiff developed an infection at the surgical site and had to undergo another procedure on June 28, 2002, to drain and disinfect the wound. The evidence of record did not reveal how long plaintiff was out of work due to this compensable injury, but Dr. Goebel, who subsequently provided a second opinion, released him to return to work without restrictions on October 15, 2002, even though he reported persistent back and right leg pain.
4. In May 2003, plaintiff was involved in a motor vehicle accident and again injured his low back. On May 19, 2003, plaintiff presented to the office of Dr. Matthew Ohl, an orthopedic surgeon, where he saw a physician's assistant. On June 11, 2003, plaintiff presented to Dr. Ohl complaining of low back pain occasionally radiating to his right leg. Dr. Ohl ordered an MRI and referred plaintiff to a spine surgeon, Dr. Murray. The MRI was performed on June 27, 2003, and the reviewing radiologist reported it as showing enhancing scar tissue at L5-S1 with a small disc protrusion that was noncompressive.
5. On July 25, 2003, plaintiff again presented to Dr. Murray. Plaintiff complained of continued low back pain with occasional numbness and tingling in his right leg. His pain was reported to be a seven to eight out of a possible ten and he was taking hydrocodone, a narcotic pain medication. Dr. Murray reviewed the MRI and reported it as showing a recurrent disc at L5-S1 with minimal nerve root displacement on the left as well as a bulge at L4-5 with possible nerve encroachment on the right. Dr. Murray indicated that it was difficult to tell if the new disc herniation was from the motor vehicle accident, but assumed that the findings were preexisting. He concluded that plaintiff's symptoms were more consistent with a strain and prescribed conservative treatment with physical therapy and medication.
6. On October 27, 2003, plaintiff began working for defendant-employer as a metal fabricator. The company sold steel and did some metal fabrication work. It was owned and operated by Bob Reitzel. Plaintiff worked there for three days before the alleged incident that is the subject matter of this claim. Although he testified that he performed numerous tasks during the first two and one-half days of his employment, according to the testimony of Mr. Reitzel, he spent that time observing how experienced employees performed their tasks. At the hearing before the Deputy Commissioner, Mr. Reitzel testified that he took plaintiff through the facility to show him what would be expected of him.
7. Mr. Reitzel further testified that on Wednesday, October 29, 2003, plaintiff was still in training and he continued the introductory tour of the warehouse. However, plaintiff has alleged that Mr. Reitzel asked him to help another employee, Ibrihm Delic, put sheet metal into a new rack, that he helped to lift a 16-foot piece of metal which weighed one hundred to two hundred pounds and that he felt a sharp pain in his low back and down his left leg when he stood the metal sheet on its side. Plaintiff also alleged that he told Mr. Reitzel that he thought he had pulled something in his back before he resumed working.
8. On the afternoon in question, when plaintiff and Mr. Reitzel came to the area where Mr. Delic was working, Mr. Reitzel testified that Mr. Delic was putting pieces of sheet metal into a new rack without assistance from anyone because the metal sheets were not particularly heavy. The sheets were 16 feet by 24 inches and weighed between 27 and 30 pounds. However, as Mr. Delic was trying to put one of these sheets into the rack, wind blew through the door causing the metal to flex so that it could not be directed into the rack. Mr. Reitzel asked plaintiff to stabilize the sheet so that Mr. Delic could push it into the rack. Plaintiff placed his hand on the metal to keep it straight but did not lift the weight of it while Mr. Delic pushed it into the rack.
9. At the hearing before the Deputy Commissioner, Mr. Delic confirmed in his testimony that the sheets were 16 feet by 24 inches, weighed no more than 30 pounds and that plaintiff placed one hand on the sheet but did not lift it or place his shoulder against it.
10. In their testimony at the hearing before the Deputy Commissioner, Mr. Reitzel and Mr. Delic indicated that plaintiff made no mention of an injury to them at any time before leaving work that day and did not appear to be moving any differently when he left. Plaintiff did not return to work the next day, but plaintiff's girlfriend called the office to say that he was at the hospital having tests on his back. She did not say anything about his having hurt his back at work. Plaintiff did not report for work thereafter or call his employer. Defendant first learned about an alleged injury at work sometime the next week when the general manager received a call from the hospital.
11. Although plaintiff reported having lifted a heavy piece of sheet metal while at work on October 29, 2003, and plaintiff's physicians relied on that history in forming their medical opinions, based on the greater weight of the competent evidence, the Full Commission finds that plaintiff did not hurt his back at work on October 29, 2003.
12. The greater weight of the competent evidence shows that plaintiff has failed to prove that he was injured by a specific traumatic incident or injury by accident arising out of and in the course of his employment on October 29, 2003, or at any other time.
 * * * * * * * * * * *
Based upon all the competent evidence in the record, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. In order to establish a compensable injury to the back, the employee must prove that the disabling back injury arose out of and in the course of the employment and was the direct result of either an injury by accident or a specific traumatic incident of the work assigned. N.C. Gen. Stat. § 97-2(6); Richards v. Town of Valdese, 92 N.C. App. 222,224, 374 S.E.2d 116, 118 (1988), disc. review denied, 324 N.C. 337,378 S.E.2d 799 (1989).
2. Plaintiff has failed to prove by the greater weight of the evidence that he sustained a compensable injury by accident or specific traumatic incident as a result of the work assigned on or about January 2, 1998, or at any other time. N.C. Gen. Stat. § 97-2(6); Causby v. BernhardtFurniture Co., 83 N.C. App. 650, 351 S.E.2d 106 (1986).
3. Since plaintiff has failed to carry his burden of proof in this case, he is not entitled to benefits under the Workers' Compensation Act. Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 265 S.E.2d 389
(1980), N.C. Gen. Stat. § 97-2 (et. seq.).
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be, and is hereby DENIED.
2. Each side shall pay its own costs.
This the ____ day of February.
 S/ _______________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/ _____________________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
 S/ _____________________ CHRISTOPHER SCOTT COMMISSIONER